# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE HERSHEY COMPANY, | : | 10-cv-1178 |
| | : | |
| Plaintiff/Counterclaim Defendant, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| HOTTRIX, LLC., | : | |
| | : | |
| Defendant/Counterclaim Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| VERSATILE SYSTEMS, INC., | : | |
| | : | |
| Counterclaim Defendant. | : | |

## MEMORANDUM & ORDER

### January 6, 2011

**I.     INTRODUCTION**

Before the Court in this declaratory judgment action is Plaintiff The Hershey Company ("Hershey") and Counterclaim Defendant Versatile Systems' ("Versatile Systems")  Motion to Dismiss the Amended Counterclaims and for Judgment on the Pleadings. (Doc. 36, Doc. 44 (Versatile Systems joining the Hershey Motion).) For the reasons articulated in this Memorandum, we shall deny the Motion.

**II.     STANDARD OF REVIEW**

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept

all factual allegations as true, construe the complaint in the light most favorable to the [non-moving party], and determine whether, under any reasonable reading of the complaint, the [counterclaim plaintiff] may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that [counterclaim defendant's] liability is more than "a sheer possibility." *Iqbal*, 120 S.Ct. At 1949. "Where a complaint pleads facts that are 'merely consistent with' a [counterclaim] defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 129 S.Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears

unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 127 S.Ct. 1964-65, 1969 n.8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." A "Rule 12(c) motion is little more than a relic of the common law and code era, and it only has utility when all the material allegations of fact are admitted in the pleadings and only questions of law remain. Granting a Rule 12(c) motion results in a determination on the merits at an early stage in the litigation, and thus this court requires the movant to clearly establish that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Inst. for Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) (citing *Jablonski*, 863 F.2d at 290-91, punctuation omitted). A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

### III. FACTUAL AND PROCEDURAL BACKGROUND

The underlying declaratory judgment action initiated by Hershey on June 2, 2010 (*see* Doc. 1) and Defendant Hottrix's ("Hottrix") Amended Counterclaims relate to separate iPhone applications: iMilk 1.0 and 2.0 (collectively "the iMilk App") and The HERSHEY's Syrup App. The characteristics of each application will be discussed in more detail below. Hershey commenced this action seeking a declaration that the HERSHEY'S Syrup App does not infringe any copyright related to Hottrix's earlier-produced iMilk App. Hottrix alleges that Hershey copied the iMilk App and responds with counterclaims for copyright infringement (Count I), unfair competition (Count II), trade-dress infringement (Count III), and tortious interference with prospective economic advantage (Count IV). We have jurisdiction over the underlying action pursuant to 28 U.S.C. §§ 2201 and 2202, and we have jurisdiction over the counterclaims based upon 28 U.S.C. § 1338(a) as to Count I, § 1338(b) as to Count III and § 1367(a) as to Counts II and IV.

The instant case causes us to enter into the world of application software, and specifically mobile applications. These applications, better known as "apps", have exploded in popularity due to hand-held devices such as the iPhone. Indeed, according to *AppleInsider*, an online newsletter, the annual revenue achieved by Apple, Inc. from the sale of apps for its iPhone in 2009 was in the neighborhood of

2.4 billion dollars.  With the introduction of the iPad in 2010, this figure is now undoubtedly much higher.  This is big business by anyone's measuring stick, which explains why the combatants here would bring a dispute involving computer-generated images of milk, chocolate, and syrup to federal court.

Hottrix is a developer of simulated "drinking" applications for iPhone, such as iBeer, iSoda, and the contested iMilk.  The iMilk App was developed as a video on or about August 1, 2007 by Steve Sheraton and was later registered with the Register of Copyrights.  This video was the foundation for the application, iMilk 1.0, which was available for download for $2.99 per copy at Mr. Sheraton's website.  iMilk 2.0 was later developed, registered with the Register of Copyrights, made available for sale with the iTunes application store, and achieved some level of popularity.

On or about August 12, 2008, Scott Crowell, the Director of Technology for The Hershey Company, sent an e-mail to Hottrix that expressed an interest in the iMilk App and the potential for further development into something that was beneficial to The Hershey Company.  Subsequent negotiations regarding such development between Hottrix and Hershey, however, failed.  Hershey eventually developed the HERSHEY'S Syrup App with the assistance of Versatile Systems in October 2009.

Each application portrays for the user the pouring and drinking of a glass of milk. The iMilk App imitates a glass of milk being poured and filling the screen from an unidentified source, while the HERSHEY'S Syrup App displays milk being poured from the top of the screen. The iMilk App offers a choice between various colors, and the HERSHEY'S App gives to the user the option of adding Hershey's Syrup and thus making the milk chocolate. Each application imitates the milk being "drunk": the iMilk App is "drunk" by tipping the iPhone sideways like a glass, and leaves swirl-shaped milk residue on the glass; and the HERSHEY'S Syrup App is "drunk" through a straw that is added by touching the screen. Each application has its own features. If the user shakes the iPhone while using the iMilk App, the milk turns into whipped cream or cheese. The user of the HERSHEY'S Syrup App can go through several steps to imitate adding chocolate syrup to the milk, stirring it, and blowing bubbles into the added straw. Each application ends with a sound.

On or about December 23, 2009, Hottrix sent notice to Hershey asserting that the HERSHEY'S Syrup App infringed upon the iMilk App and that Hershey had taken the code for the iMilk App and modified it to create the HERSHEY'S Syrup App. Hottrix demanded that Hershey cease its use of the application. Hershey alleges, and Hottrix denies, that the parties engaged in failed discussions

and that Hottrix later threatened suit if Hershey failed to cease its use of the HERSHEY'S Syrup App.

## IV.   DISCUSSION

Hershey advances several arguments in support of its Motion to Dismiss the Counterclaims.  We will address each of Hershey's contentions in turn, but first note that Hottrix aptly characterized the Motion as "resound[ing] more of a motion for summary judgment than a motion to dismiss. . . ." (Doc. 42 p. 6.)  Hershey appears to ignore sufficiently pleaded factual allegations, and attempts to assert that Hottrix's claims fail as a matter of law.   However, the arguments seem to advance that Hottrix is unable to *prove* its claims rather than *plead* its claims, and such an analysis is inappropriate at this stage.

### A.   Copyright Claims

Hershey argues that Hottrix's copyright claims fail as a matter of law because Hottrix has no copyright interest in the underlying ideas asserted and because Hershey's application is not substantially similar to any protectable aspect of the iMilk App.  As noted by Hershey, to establish copyright infringement, a claimant must establish ownership of a copyright and copying by another of the "protectable expression" of the work.  *See Parker v. Google, Inc.*, 242 F. Appx. 833 (3d Cir. 2007).  If a claimant is unable to produce evidence of direct copying,

it must demonstrate that the defendant had access to the copyrighted work and that the two products are substantially similar.  *Dam Things From Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 561-62 (3d Cir. 2002).

Hottrix notes that it is seeking to protect expression found in two copyrighted works – the iMilk Video and the iMilk Software that compose the iMilk App.  Hottrix asserts that it is not misguidedly seeking to protect the "idea" of a milk-drinking application, but rather has properly pleaded that Hershey has infringed the protected elements of the expression.  Despite the differences that Hershey attempts to highlight, Hottrix characterizes the level of specificity with which the Court should view the applications differently, and thus alleges their substantial similarity.

We find that Hottrix has sufficiently pleaded copyright infringement.  Though evidence of direct copying is unavailable, Hershey does not dispute that it had access to the iMilk App.  Further, despite differences between the applications, Hottrix has sufficiently pleaded that the two applications are substantially similar.

### B.   Trade Dress and Unfair Competition

Based upon the factual allegations detailed above, Hottrix asserts unfair competition and Lanham Act violations for trade dress.  In support, Hottrix maintains that Hershey unlawfully mimicked the "look and feel" of the iMilk App.

Hottrix alleges that it is synonymous with iPhone drinking applications, and, therefore, any reasonable consumer would assume that Hottrix developed a drinking application. Hottrix thus maintains that Hershey capitalized on Hottrix's consumer good will and product recognition.

Hershey maintains that Hottrix's trade dress and unfair competition claims must fail because they are preempted by the Copyright Act and barred by other doctrines. Hershey notes that 17 U.S.C. § 301 preempts state law claims that fall "within the subject matter of copyright law" if the right asserted in the claim is "equivalent" to the rights specified in Section 106 of the Copyright Act. (*See* Doc. 37 p. 15, (quoting *Daley v. Firetree, Ltd.*, 2006 WL 148879, *2 (M.D. Pa. January 19, 2006) (McClure, J.)).)

Hottrix maintains that the counts asserted under Pennsylvania's Unfair Competition law and the Lanham Act, both based upon trade-dress, allege wrongs that are separate and distinct from those alleged under the Copyright Act. Hottrix highlights that, although the Lanham Act is limited so that it does not encroach on the Copyright Act interests, parallel claims are not *per se* impermissible. We agree. (*See* Doc. 42 p. 25.) Indeed, several courts have concluded that claims for copying the "look and feel" of a website under the Lanham Act would not interfere with copyright interests. *See Conference Archives v. Sound Images*, 2010 U.S.

Dist. LEXIS 46955 (W.D. Pa. March 31, 2010).

We find that the claims under unfair competition and the Lanham Act are not apparently preempted because Hottrix sufficiently alleges that Hershey copied the characteristic "look and feel" of Hottrix's drinking application. Further, to the extent that Hershey argues that Hottrix has specifically failed to plead what that "look and feel" is and rather attempts to assert exclusive rights to all "iPhone drinking applications", we disagree and find that Hottrix has sufficiently pleaded facts, and specifically characteristics of the application, to state these claims.

### C. Tortious Interference

Finally, Hottrix asserts a claim for tortious interference with prospective economic advantage. Hottrix asserts that it has and had an expectancy in continuing relationships with purchasers and licensees of the iMilk App, and that Hershey's copying of the "look and feel" of the application led some consumers that would have otherwise purchased to iMilk App to download the HERSHEY'S Syrup App instead.

A claim for tortious interference asserted parallel to a Copyright Act claim can survive if the claimant alleges an "extra element" that makes the state-law claim distinct from the Copyright Act claim. *See Long v. Quality Computers and Applications, Inc.*, 860 F. Supp. 191, 196 (M.D. Pa. 1994). Hershey maintains that

the claim is *exactly* the same as the Copyright claim, while Hottrix asserts that the claim for tortious interference does not rely on copying for its basis but rather the copying of the "look and feel" of the iMilk App.

We find that, for the same reasons Hottrix's claims detailed above are not preempted, its tortious intereference claim likewise is not preempted because its pleadings regarding copying of the "look and feel" of the application suffice as the "extra element" to render the claim distinct from the copyright infringement claim. Hershey argues that there is no underlying "wrongful conduct" as necessary for such a claim, and that argument relies on the dismissal of the copyright claim. Though the identity of a prospective relationship is unknown and thus the plausibility of satisfaction of that element seems weak, we will err on the side of caution and allow Hottrix's claim for tortious interference to stand.

V.   **CONCLUSION**

We find that Hottrix has sufficiently pleaded its counterclaims for copyright infringement, unfair competition, and tortious interference.  We repeat that, at this stage, we are not evaluating whether Hottrix has satisfied its burden of proof with respect to the claims, but rather whether it contains contain "sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009).  The amended

counterclaims are not deficient in giving to Hershey notice of what the claims are and the grounds for those claims and, rather, provide detailed factual allegations that serve as the basis for those claims. We further find that, based upon the allegations of the amended counterclaims, Hottrix's claims of unfair competition, trade dress, and tortious interference are not preempted. However, because the underlying factual basis of the legal theories asserted are undeveloped, we note that Hershey is free to raise their preemption arguments in the future if further discovery demonstrates that the genuine basis of the claims exists exclusively within copyright law. Because a reasonable reading of the amended counterclaims demonstrate that Hottrix has sufficiently stated claims upon which relief could be granted, we will deny Hershey's Motion to Dismiss (Doc. 36) and Versatile Systems' Motion that joins the Hershey Motion (Doc. 44).

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. Hershey's Motion to Dismiss and for Judgment on the Pleadings (Doc. 36) is **DENIED**; and

2. Versatile Systems, Inc.'s Motion to Dismiss (Doc. 44) is **DENIED.**

/s/ John E. Jones III
John E. Jones III
United States District Judge